KNOX, Respondent, *vs.* HUNT & PORTER, Appellants.

1. A landlord has a lien upon the crops grown on the demised premises in any year for the rent of that year, (R. C. 1845,) but this lien can only be enforced by process of law. Rent may be reserved in such a way that the landlord will not be entitled to his lien.

2. The lien continues eight months, and during that time, the landlord may take steps to subject the crop to the payment of the rent. If the property remains in specie in the hands of an assignee, he may, during the continuance of the lien, seize it under process, or might, if it was consumed, hold the assignee accountable for its value, if the assignment was voluntary, or taken with a knowledge of the existence of the lien. The crop, during the continuance of the lien, would not be subject to the process of the law at the suit of any other creditor, without payment of the rent, as the lien of the landlord would protect it from sale. Nothing can be seized under execution which cannot be sold.

*Appeal from St. Louis Circuit Court.*

*Glover & Richardson,* for appellants. Hunt was entitled to a lien on the crop for the rent accruing for the year, or at least for so much thereof as properly represented the farming lands, and the court ought not to have excluded the evidence that would have established the amount thereof. The letter of the law is not inconsistent with this view, and there is no diffi-

culty in practice under it. The amount of the rent is uncertain, and must be liquidated by proof ; but this is the case, in many instances, with all liens. The builder must show the amount of his demand. The claimant on account of stores or supplies to a boat must establish his. If Hunt had a lien on the property taken and carried away by himself and Porter, that lien was a special property, which he had the right to oppose to the plaintiff's claim for damages.

*Knox & Kellogg,* for respondent. Two questions arise. 1. Whether Hunt had a lien. 2. If he did, whether he asserted it in a legal or justifiable manner.

The obvious intent of the law entitled an act concerning landlords and tenants is, to provide for the securing of the rent for lands used for agricultural purposes, and not those rented and used as Hunt's lands are used, chiefly for coal mining. The law is defective, in not furnishing the machinery necessary to enforce it. If this lien can be enforced at all, it can only be done where there is a fixed annual rent, and not where the rent is reserved as it is in this case. *Tift* v. *Virden,* 11 S. & M. 153. 8 Black. 86. 11 Illinois, 527. 1 Bay, 315, 443. Nor can it be enforced without legal process. 6 Yerg. 267–9. Ib. 252, 258, 260. 7 Yerg. 494–7.

SCOTT, Judge, delivered the opinion of the court.

This was an action of trespass *de bonis asportatis,* commenced by the plaintiff, Knox, against the defendants, Hunt and Porter, in October, 1848. There was a verdict and judgment for the plaintiff.

On the 9th July, 1847, Hunt, the defendant, leased to E. K. Dodge his farm in St. Louis county, with all the coal mines in and upon the same, then opened or to be thereafter opened, for the term of six years, to commence from the date of the lease, for the sum of seven thousand dollars ; one thousand dollars of which was to be paid on or before the 15th July, 1847 ;

Knox *v.* Hunt & Porter.

three thousand dollars on the first of October, 1848 ; and the balance of the sum in annual instalments of six hundred dollars ; the first to be paid on the 1st of October, 1849.    On the 18th December, 1847, E. K. Dodge assigned his lease to Parker Dodge and James T. Key, who formed a partnership and carried on the business of farming and mining.    About the 1st October, 1848, Key, one of the partners, sold all the partnership property, the teams and the crops of grain and hay upon the farm, to Richard F. Knox, the plaintiff.    Afterwards, when Knox undertook to remove the crops from the leasehold premises, he was prevented by Hunt, the defendant, and others : Hunt being the landlord, claimed a lien on the crops for the payment of his rent.

1. Under these facts, the question is, whether Hunt, the landlord, had a lien on the crops for the rent in arrear and unpaid, and whether if he had a lien, he could enforce it by seizing the crops without any process of law, in order to prevent their being removed from the leasehold premises.    If there was any rent due for the year during which the crop was raised, we see no reason why the lien of the landlord should not exist. Rent may be reserved in such a way as will not entitle the landlord to a lien, especially in long leases.    Whether any rent was due for the year in which the crop was made, we will not determine, as it may be conceded that Hunt had a lien, and yet his conduct cannot be sustained in law.    It is not seen how the existence of a lien in favor of a landlord, gives him a right to enforce it without process of law.    If the lien could be enforced by the landlord without process, it would scarcely have been necessary to prolong its duration for the term of eight months. Nor could it have been the intention of the legislature that the landlord should have power to seize the crops to hold them, or to prevent their removal from the leasehold premises, in order that they may be liable for the rent.    So important a power, and one so summary in its enforcement, would not have been left to implication.    There is nothing novel in the idea of a

lien existing, unconnected with a right to the possession of the property on which it exists. Our law abounds with instances of such liens.

2. The lien continues for eight months, and during that time the landlord may take steps to subject the crop to the payment of the rent. If the property remains in specie, in the hands of an assignee, he may, during the continuance of the lien, seize it under process, or might, if it was consumed, hold the assignee accountable for its value, if the assignment was voluntary or taken with a knowledge of the existence of the lien. The crop, during the existence of the lien, would not be subject to the process of the law without payment of the rent, at the suit of any other creditor, as the lien of the landlord would protect it from sale. Nothing can be seized under execution which cannot be sold. Cross on Lien, 48.

Judge Ryland concurring, the judgment will be affirmed. Judge Gamble did not sit in the case.